### In the Matter of the EXTRADITION OF Sandor MOLNAR.

#### No. 02 M 0005.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 1, 2002.

Emergency motion for stay of order of release granted and defendant ordered detained March 18, 2002.

David Weisman, AUSA, Chicago, IL, for plaintiff.

Michael Cohen, Chicago, IL, for defendant.

### MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

This matter is before the court on a Complaint filed by the United States of America alleging, among other things, that there is an Extradition Treaty (S. Treaty. Doc. No.104–5, 1994 West Law 855132 ("Treaty")) between the Republic of Hungary and the United States of America ("Government"); that the defendant was duly and legally charged with committing a crime of violence within the jurisdiction of the Republic of Hungary; and that a warrant was issued for defendant's arrest on May 24, 2001.

The complaint further alleges that the Republic of Hungary has made a provisional arrest request under Article Eleven of the Treaty, and that a regular diplomat-

ic request for extradition of the defendant will be made in conformity with the Treaty, and will be presented to the court within 60 days from the date of defendant's provisional arrest. On January 9, 2002, defendant was taken into custody under the complaint. The issue before the court is whether the defendant should remain in custody or be set free under bail.

## I. BACKGROUND

On January 9, 1998, in the Republic of Hungary, defendant Sandor Molnar, while working as a security guard watching a truck, left his assigned post to go to a bar. He was accompanied by his girlfriend and while at the bar he consumed alcoholic beverages. Upon returning to his watch post at the truck, he began kicking it. This disturbance drew the attention of two police officers who approached the defendant and instructed him to stop kicking the truck. Defendant retrieved a gun from the truck and aimed it at one of the officers. The officer disarmed defendant, and discovered that the gun was not in fact loaded. The officers also determined, at the time, that defendant was under the influence of alcohol. Defendant was brought before a Magistrate/Prosecutor, who concluded that criminal action against Molnar was not appropriate. Sometime thereafter, defendant left Hungary and came to the United States, under a lawful visa, seeking work. Thereafter, charges were reinstated against him in Hungary.

When defendant was arrested in the United States, he had been employed for at least 38 months as a painter. His employer came forward during a detention hearing and indicated that defendant was a responsible, hard-working employee, and that his job was available to him when released from custody. At the time of the hearing, defendant was earning a monthly net income of $2,600. Two other witnesses who testified on defendant's behalf indicated that defendant's mother is seriously ill with cancer and depends on money he sends to her. The witnesses testified that defendant has sent his mother weekly checks since he has been in this country.

Defendant essentially has no criminal history except for the incident in the Republic of Hungary. With respect to that incident, the defendant left Hungary after charges were dropped against him and, therefore, was not a fleeing fugitive. The fact of the matter is that defendant's arrest warrant—issued by the Republic of Hungary on May 24, 2001, approximately three and a half years after the gun incident—is the reason for his arrest and custody. Defendant maintains that he is not a risk of flight and there are conditions available to reasonably assure his presence at trial. He also argues there are special circumstances that would allow for his release from custody. The Government maintains that as this is an international extradition matter, there is a presumption against bail, except when special conditions are shown justifying such relief, and that defendant has simply not shown the existence of any "special circumstances."

## II. DISCUSSION

(a) *Presumption against bail:*

■ Some ninety nine years ago in *Wright v. Henkel,* 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903), the Supreme Court held that while bail should not ordinarily be granted in extradition cases, release was not foreclosed where special circumstances exist. 190 U.S. at 63, 23 S.Ct. 781. The courts that have interpreted *Wright v. Henkel* generally agree that there is a presumption against bail in an extradition case and that a defendant facing an extradition hearing has the burden of establishing special circumstances in order for a court to order pre-hearing conditional release. *Salerno v. United States,* 878 F.2d 317 (9th Cir.1989); *United States*

*v. Leitner,* 784 F.2d 159 (2d Cir.1986). The rationale for distinguishing pretrial release in extradition cases from federal criminal cases is that extradition cases involve an overriding national interest in complying with treaty obligations. If the United States were to release a foreign fugitive pending extradition and the defendant absconded, the resulting diplomatic embarrassment would have an effect on foreign relations and the ability of the United States to obtain extradition of its fugitives. *U.S. v. Taitz,* 130 F.R.D. 442 (S.D. Cal.1990). Also *See generally,* Hall, *A Recommended Approach to Bail in International Extradition Cases.* 86 Mich. L.Rev. 599 (1987); Whiteman, 6 *Digest of International Law,* 1033–1044 (1968). Additionally, because an extradition proceeding is not a criminal case, the Bail Reform Act of 1984 does not govern, nor is its presumption in favor of bail a part of extradition proceedings. *Kamrin v. United States,* 725 F.2d 1225, 1227–1228 (9th Cir.), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984).

(b) *Risk of Flight:*

■ Whether defendant is, or is not, a risk of flight is not a matter that falls within the ambit of "special circumstances" determinations. Rather, the absence of defendant's risk of flight is more in the nature of a condition precedent to going forward with any determination of the existence of "special circumstances" that could overcome the presumption against bail. The Ninth Circuit in *Salerno, supra,* made it clear that absence of risk of flight is not the basis for release. Rather, special circumstances must exist in addition to absence of the risk of flight before a defendant in an extradition matter could be released from custody. We are bound to follow this sound view.

In the instant case the Government has acceded to the fact that Molnar is not a risk of flight. In addition, a friend of Molnar has volunteered to post her house as a $100,000 security to assure his presence at any future court proceedings. His background would suggest he is not a flight risk.

(c) *Molnar's Provisional Arrest*

■ Molnar was arrested under a provisional complaint after a warrant for his arrest had been issued by the Republic of Hungary. A regular diplomatic request for extradition of a fugitive, in conformity with the Treaty, has not been issued, as of this date, but allegedly is being prepared. In any event, under the Treaty the official documents must be presented within 60 days from the date of Molnar's arrest. Failure to do so may allow for the release of Molnar.

The courts have not viewed a provisional arrest, in and of itself, a "special circumstance." *In the Matter of the Extradition of Kamel Nacif–Borge,* 829 F.Supp. 1210, 1217 (D.Nev.1993); *U.S. v. Leitner,* 784 F.2d 159, 160 (2nd Cir.1986). It certainly does not eliminate the "special circumstances" rule. *U.S. v. Williams,* 611 F.2d 914–915 (1st Cir.1979). (Citing to *Wright v. Henkel* which involved a provisional arrest warrant) Some courts, however, have followed a trend towards liberalization of bail in the provisional arrest context. *Leitner,* 784 F.2d at 160 (cases cited). Some courts have discussed an issue of "urgency" in the provisional arrest situation. *U.S. v. Messina,* 566 F.Supp. 740, 742 (E.D.N.Y.1983); *Caltagirone v. Grant,* 629 F.2d 739, 744 n. 10 (2nd Cir.1980). Urgency is not an issue in this case since Molnar's alleged criminal conduct occurred January 9, 1998; the warrant for his arrest was issued on May 24, 2001, some three-and-a-half years later. Additionally, the Government acknowledges that Molnar is not a "flight risk."

Our sense of the reason for a provisional arrest is to prevent flight in advance of the formal request. *Messina*, 566 F.Supp. at 742. Whether the Treaty itself can shed any different light is an issue not presented by the parties. Accordingly, since Molnar's extradition is currently under a provisional arrest and there was no urgency to his apprehension and incarceration, we choose to follow a more liberal view in determining whether Molnar is to be released under bail. *Leitner*, 784 F.2d at 160.

*(d) Special Circumstances*

The term "special circumstances" is one that has eluded judicial definition and there is an absence of any bright line parameters to it, as will become more apparent below. Dealing with "special circumstances" issues seems to require a cautious judgment by the judge, taking into account the totality of the facts and having a healthy respect for this country's international treaty agreements.[1] Most cases dealing with the issue of "special circumstances" seem to point out what it is not. A partial list of what have not been found to be "special circumstances" includes: a significant bond and an unblemished record; *Leitner*, 784 F.2d at 161; defendant being a highly trained doctor available to administer to the public; *In the Matter of Extradition of Yechiel Heilbronn*, 773 F.Supp. 1576 (W.D.Mich.1991); need to consult with counsel and assist in gathering evidence to support defense; *Extradition of Smyth*, 976 F.2d 1535; defendants' brother had been released; *U.S. v.*

*Williams*, 611 F.2d at 915; discomfort of sitting in jail; *In re Klein*, 46 F.2d 85 (S.D.N.Y.1930); the need to consult with one's attorney about pending civil litigation, complexity of the criminal case, and severe financial and emotional hardships; *In the Matter of Extradition of Robert Henry Russell*, 805 F.2d at 1215, 1217 (C.A.5, 1986); advanced age or infirmity; *In the Matter of Extradition of Artukovic*, 628 F.Supp. 1370, 1374–75 (C.D.Cal.1986) (stay denied *sub. nom. Artukovic v. Rison*, 784 F.2d 1354 (9th Cir.1986)); the need for a special diet due to having one kidney and health concerns; *In the Matter of the Extradition of Kamel Nacif–Borge*, 829 F.Supp. at 1216.

On the other hand, courts have found special circumstances to exist when defendants have shown a high probability of success, a serious deterioration of health, or unusual delay. *Salerno*, 878 F.2d 317 (citing cases); reason to believe underlying charges cannot be supported under Treaty provisions, or impropriety in charge or procedure. *In the Matter of the Extradition of Anne Hamilton–Byrne*, 831 F.Supp. 287, 290 (S.D.N.Y.1993); combined factors of lengthy extradition hearing, lack of prior record, allergic reaction to soap used in laundered clothes at correctional facilities, and inability to carry out religious rituals. *U.S. v. Taitz*, 130 F.R.D. at 444 (S.D.Cal.1990); promoting harmony between the supporters of the cause of Catholics in Northern Ireland and those who's interests are otherwise. *In the Matter of the Requested Extradition of Kirby*, 106 F.3d 855, 856 (9th Cir.1996);

---

1. One court has expressed its concern that case law has not clearly explained precisely what "special circumstances" means and to what degree of proof the extradited must demonstrate such circumstances and that the "amorphous 'special circumstances'" standard has resulted in an incoherent approach to bail in international extradition cases. *In the Matter of the Extradition of Kamel Nacif–*

*Borge*, 829 F.Supp. 1210, 1213–1214 (D.Nev. 1993).

> Perhaps we should leave the interpretation of "special circumstances" to Lewis Carroll's insightful approach "When I use a word," Humpty Dumpty said in rather a scornful tone, "it means just what I choose it to mean—neither more nor less." *Alice's Adventures in Wonderland* (1865).

the availability of bail for crime charged in the demanding country. *In the Matter of the Extradition of Kamel Nacif–Borge,* 829 F.Supp. at 1221.

 Molnar argues that there exist certain special circumstances that justify bail, claiming each can qualify, namely: the financial assistance he currently gives to his seriously ill mother who resides in Hungary, and who depends on money he sends to her; the provisional nature of his arrest; that he is not and never has been a fugitive from justice; the possible delay in the extradition proceedings that is inherent in the provisional arrest scenario; the fact that criminal charges were initially dropped against him, and only later reinstated after he had left Hungary, which might after all show weakness in the criminal charges against him; and the dedication of friends who, by showing their willingness to post a home as security for his release, vouch for his compliance with any Order of Release.

The Government cogently and correctly has argued that each item on Molnar's list of what he considers to be "special circumstances," is not sufficiently "special" to permit his release. We agree. When looking to each of the circumstances presented by the defendant, none of them, on their own, rise to the level of "special circumstances" which would merit release. In the provisional arrest setting, however, which allows for a more liberal approach, we feel compelled to view his articulated "circumstances" collectively rather than singularly. *See, In the Matter of the Extradition of Kamel Nacif–Borge,* 829 F.Supp. at 1216; *U.S. v. Taitz,* 130 F.R.D. at 446 (holding that the cumulation of several factors may constitute "special circumstances" that justify bail pending extradition proceedings). As such, taking a collective approach to what Molnar presents, we can find that he has made a case for himself in establishing "special circum-stances," albeit that it is a considerably weak one. Thus, we find Molnar has established "special circumstances" to overcome the presumption against bail.

Finding that "special circumstances" exist in this case, Molnar is entitled to be released on bail. True, he has presented a weak case, but the threshold issue in the first place was the existence of the "circumstances." The courts have held that weakness of the "special circumstances" does not alter the fact that they exist. *In the Matter of the Extradition of Terence Damien Kirby,* 106 F.3d at 864. Molnar will be ordered to be released on a secured $100,000 bond.

On a note of caution, Molnar's victory on the issue of bail might be short lived after all, depending on how conscientious the Republic of Hungary is in issuing its diplomatic request for extradition. Our ruling specifically deals with an arrest under a provisional arrest warrant where it is appropriate to employ a more liberal standard of review for the existence of "special circumstances." When the official and regular diplomatic request for extradition is presented and filed, a narrower and more stringent standard of review as to the existence of "circumstances" will apply and we believe, under the facts of this case, that standard is one Molnar might not be able to meet.

### III. CONCLUSION

For the foregoing reasons, it is hereby ordered that Sandor Molnar be released from custody upon the posting of real property as security for $100,000 bond and that the order of release contain those other necessary conditions which would reasonably assure his presence at further court proceedings.