## In the Matter of THE EXTRADITION OF ARMANDO MUNGUIA

### No. CIV.A. M–03–019.

United States District Court,
S.D. Texas,
McAllen Division.

Nov. 18, 2003.

Oscar Alvarez, Attorney at Law, McAllen, TX, Jack Lamar Wolfe, Attorney at Law, McAllen, TX, for dft.

Maria A Aponte, U.S. Attorney's Office, McAllen, TX, for pet.

### AMENDED MEMORANDUM & CERTIFICATE OF SUMMARY EXTRADITABILITY [1]

RAMOS, United States Magistrate Judge.

### I. Overview

The government of Mexico, pursuant to 18 U.S.C. § 3184, seeks the extradition of Armando Munguía ("Respondent"), a citizen of the United States of America, pursuant to the extradition treaty which entered into force between the United States of America and the United Mexican States on January 25, 1980.[2] (*See, e.g.,* Docket Entry # 1.) The Mexican government desires to prosecute Respondent for the murder of Susana Díaz Nerváez, which occurred in or near Reynosa, Tamaulipas, Mexico, during June of 1996. (*See, e.g.,*

Docket Entry # 1.) Because Respondent has agreed to summary extradition, the government of the United States of America should take all measures legally permitted to expedite the extradition. *See* 31 U.S.T. 5059, art. 18.

### II. Procedural Summary

The government, on behalf of Mexico, filed its "SEALED COMPLAINT FOR PROVISIONAL ARREST WITH A VIEW TOWARDS EXTRADITION" on October 21, 2002. (Docket Entry # 1.) The following day, U.S. District Judge Ricardo Hinojosa recused himself, and the case was re-assigned to U.S. District Judge Randy Crane. (Docket Entry # 2.) Thereafter, on November 15, 2002, this case was transferred to the undersigned. (Docket Entry # 3.)

The record indicates that Respondent was arrested by a Deputy U.S. Marshal on December 17, 2002, making his first appearance in court on the same day. (Docket Entries # 6, 7.) The Federal Public Defender was initially appointed to represent Respondent (however, that appointment was ultimately withdrawn). (Docket Entries # 9, 11, 12.) The next day, on December 18, 2002, the government filed its "MOTION TO DETAIN RESPONDENT PURSUANT TO 18 U.S.C. § 3184." (Docket Entry # 5.) Respondent's detention hearing occurred on December 20, 2002, at which time he was represented by retained counsel. (Docket Entry # 13.)

The government filed its pre-hearing extradition memorandum on December 31, 2002. (Docket Entry # 14.) Some time later, Respondent and his retained counsel apparently reached an impasse in their relationship, and, as a consequence, both sought the appointment of new counsel for

---

1. (*See* Docket Entry # 45.)

2. *See* 31 U.S.T. 5059.

Respondent. (Docket Entries # 28, 29.) The undersigned then appointed attorney Oscar Alvarez to represent Respondent. (Docket Entries # 31, 32.)

By October of 2003, Respondent and the government were apparently finalizing their negotiations with respect to the instant extradition proceedings and Respondent's pending federal narcotics-related prosecution in Beaumont, Texas.[3] (Docket Entries # 40, 41.) As confirmation of the negotiations, Respondent and his attorney signed an affidavit on November 7, 2003, wherein Respondent conceded that he is subject to extradition. (Docket Entry # 42.) In the document, Respondent asks the court to deliver him to Mexican authorities. (*Id.*)

The undersigned convened a hearing in this case on November 10, 2003. (*See* Docket Entry # 43.) The following occurred at the November 10, 2003, hearing:

- Movant was sworn in.
- The court inquired as to Respondent's mental state, which appeared to be completely lucid.
- Respondent informed the court that he was pleased with the assistance he had received from his appointed counsel.
- Respondent testified that he understood the treaty procedures.
- Respondent stated that he was aware that, by conceding extraditability, he could be tried for other crimes within the Mexican Republic.
- Respondent testified that he was not being forced to concede the issue of extraditability.

(Electronic Recording of Hearing on November 10, 2003.) Upon receipt of the foregoing, the court accepted Respondent's concession of extraditability. (Docket Entry # 44.)

*3. See United States v. Munguia,* Cause # 02–

## III. Analysis

As a starting point, the court notes that the substantive right of a foreign country to request the return of a fugitive and the duty of the United States of America to deliver the fugitive depends on the existence of a treaty between the requesting nation and ours. *See In re United States,* 713 F.2d 105, 107–08 (5th Cir.1983). To invoke its right to extradition, the requesting nation must submit its request to the court. *Id.* at 108. The court must determine whether the fugitive is subject to extradition and, if so, must order the fugitive's commitment and certify the supporting record to the Secretary of State. *Id.* The decision to surrender the fugitive then rests in the discretion of the Secretary of State. *Id.*

Under the facts of this case, the relevant accord is the extradition treaty between the United States of America and the United Mexican States, which entered into force on January 25, 1980. 31 U.S.T. 5059. Thus noted, the court bears in mind that each separate extradition treaty between the United States of America and a foreign nation is *sui generis,* and as a contract between two sovereigns, sets forth its own law. *Extradition of Nacif–Borge,* 829 F.Supp. 1210, 1213 (D.Nev. 1993) (concerning Mexican extradition request); *see also Extradition of Cervantes Valles,* 268 F.Supp.2d 758, 770 (S.D.Tex. 2003) (concerning Mexican extradition request). Consequently, the court looks to the specific provisions of the relevant treaty.

Article 18 of the relevant treaty addresses summary extradition, providing as follows:

"If the person sought informs the competent authorities of the requested Party that he agrees to be extradited, that

CR–174 (E.D.Tex.).

Party may grant his extradition without further proceeding, and shall take all measures permitted under its laws to expedite the extradition."

31 U.S.T. 5059. Based on Respondent's affidavit and declarations in court, it seems absolutely clear that he agrees to be extradited, and that article 18 has been satisfied insofar as Respondent has communicated his desires in this regard to the competent authorities. Further, the issue, if any, of Respondent's citizenship should not stand in the way of an eventual surrender by the Secretary of State. 18 U.S.C. § 3196.

### IV. Certificate of Summary Extraditability

Having determined that Armando Munguía has validly agreed to be extradited to the United Mexican States, extradition should occur without further proceedings, and the United States of America shall take all measures under its laws to expedite the extradition. 31 U.S.T. 5059, art. 18.

### V. Notice

The court clerk shall deliver a copy of this amended memorandum to counsel by any receipted means. The court clerk shall also send a copy of this amended memorandum by certified mail to:

• Colin L. Powell, Secretary of State, 2201 C. Street, NW, Washington, D.C. 20520; and

• Ambassador Juan José Bremer Martino, Embassy of Mexico, 1911 Pennsylvania Avenue, NW, Washington, D.C. 20006.