106 F.3d 855
 97 Daily Journal D.A.R. 2097
 In the Matter of the REQUESTED EXTRADITION OF Terence Damien KIRBY.
UNITED STATES of America, Appellant,
v.
Terence Damien KIRBY, Appellee.
In The Matter of the REQUESTED EXTRADITION OF Pol BRENNAN.
UNITED STATES of America, Appellant,
v.
Pol BRENNAN, Appellee.
In The Matter of the REQUESTED EXTRADITION OF Kevin Barry John ARTT.
UNITED STATES of America, Appellant,
v.
Kevin Barry John ARTT, Appellee.
 Nos. 96-10068, 96-10069 and 96-10074.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 15, 1996.
Decided Dec. 16, 1996.
As Amended Feb. 27, 1997.
 
 Sara Criscitelli, United States Department of Justice, Washington, D.C., for appellant.
 Gilbert Eisenberg, Filippelli & Eisenberg, Mark W. Danis, Jennifer H. Small, James J. Brosnahan, Morrison & Foerster, James Larson, San Francisco, CA, for appellees.
 Appeals from the United States District Court for the Northern District of California, Charles A. Legge, District Judge, Presiding. D.C. Nos. CR-93-00032-CAL, CR-92-00051-CAL and CR-94-00086-CAL.
 Before: SNEED, John T. NOONAN, and David R. THOMPSON, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Appellees Terence Damien Kirby, Pol Brennan and Kevin Barry John Artt fled to the United States after escaping in 1983, along with 35 other prisoners, from the Maze Prison in Belfast, Northern Ireland. In January, 1996 U.S. District Judge Charles A. Legge released all three on bail, pending a hearing under 18 U.S.C. § 3184 to determine whether they are extraditable to the United Kingdom. The United States appeals the bail orders on behalf of the United Kingdom.[1] We affirm the grant of bail.
 
 I.
 FACTS AND PROCEDURAL HISTORY
 
 2
 The United Kingdom requested extradition of Artt, Brennan and Kirby under the Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, June 8, 1972, U.S.-U.K., 28 U.S.T. 227, (The "U.S.-U.K. Extradition Treaty"), as modified by the Supplementary Treaty Concerning the Extradition Treaty, June 25, 1985, U.S.-U.K., reprinted in S.Exec.Rep. No. 99-17, at 15-17 (1986) (the "Supplementary Treaty"). United States authorities arrested Artt in June 1992, Brennan in January 1993, and Kirby in February 1994. The district court, Judge Legge presiding, stayed Artt's and Brennan's extradition proceedings in June 1993, pending the outcome of the Smyth case.[2] In re Extradition of Smyth, 863 F.Supp. 1137 (N.D.Ca.1994) (denying a request to certify Mr. Smyth for extradition to the United Kingdom), rev'd, 61 F.3d 711 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 2558, 135 L.Ed.2d 1076 (1996). Kirby's case was at no time stayed pending a decision in Smyth.
 
 
 3
 The district court reactivated the Artt and Brennan cases, which had been stayed for fifteen months, after another judge of the district court ruled on the Smyth case in September, 1994. In May 1995, Judge Legge's court assumed responsibility for Kirby's case as well. In November 1995, Artt, Brennan and Kirby each moved for bail. At a December 20, 1995 hearing the district court determined that Artt and Brennan were neither flight risks nor dangers to the community, and also set the terms of their bail. On December 27, 1995, the district court determined that Kirby was not a danger to the community. Although the court viewed Kirby as a "potential flight risk," it found that it could fashion conditions to assure Kirby's presence at future proceedings.
 
 
 4
 Brennan was released from U.S. custody on January 3, 1996 on $500,000 bond secured by $500,000 in property pledged by sureties. He is committed to the custody of his wife and his employer. Kirby was released from U.S. custody on January 3, 1996 on $1,000,000 bond secured by $500,000 in property and the signatures of five sureties. He resides with his wife and is committed to the custody of three other people. Artt was released from U.S, custody on January 10, 1996 on $500,000 bond secured by $100,000 in cash or property and the signatures of five sureties. He is committed to the custody of his housemate Rosemary Campbell and his employer.
 
 
 5
 In addition to the terms described above, all three men are subject to electronic monitoring. They must report to court officials three times a week by phone and once a week in person. They have turned in all passports and visas to the court and may not apply for others. Finally, they are prohibited from leaving the Bay Area.
 
 II.
 JURISDICTION TO HEAR THIS APPEAL
 
 6
 28 U.S.C. § 1291 provides, in part, that courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts." Appellees contend that this court lacks jurisdiction to hear the appeals from the bail rulings in these extradition cases, because such rulings were neither "final decisions," nor "decisions of district courts." We disagree.
 
 
 7
 Over ninety years ago, the Supreme Court recognized that there is a presumption against bail in an extradition case and only "special circumstances" will justify bail. Wright v. Henkel, 190 U.S. 40, 63, 23 S.Ct. 781, 787, 47 L.Ed. 948 (1903). As the United States points out, this presumption against bail is contrary to the presumption that favors bail in domestic prosecutions. Beaulieu v. Hartigan, 554 F.2d 1, 2 (1st Cir.1977) ("Unlike the situation for domestic crimes, there is no presumption favoring bail" in extradition cases). Putting aside for the moment the question of whether "special circumstances" justify the grant of bail in each of these cases, it should be stated that the bail issue came to the Supreme Court in Wright v. Henkel on a petition for habeas corpus. Wright, 190 U.S. at 40, 23 S.Ct. at 781. Whereas the government's right to appeal the grant of a habeas corpus petition is well established, 28 U.S.C. § 2255, there is no Supreme Court authority either affirming or denying the right of the United States to appeal from a district court order finding that "special circumstances" justify the grant of bail to a potential extraditee.
 
 
 8
 Despite this absence of authority, appellees argue that once the district judge hearing the potential extraditee's plea for bail pending an extradition hearing grants that plea, his finding of "special circumstances" cannot be appealed by the United States to this court. Appellees' argument raises at least three distinct problems. First, if we adopted that view, it would create a striking lack of symmetry between the inability of the United States to appeal and the ability of the potential extraditee to appeal by way of habeas corpus. Second, as noted above, the Supreme Court in Wright v. Henkel stated expressly that "bail should not ordinarily be granted in cases of foreign extradition," and that the grant of bail should be limited to "special circumstances." Wright, 190 U.S. at 63, 23 S.Ct. at 787. See also Salerno v. United States, 878 F.2d 317 (9th Cir.1989) ("There is a presumption against bail in an extradition case and only 'special circumstances' will justify bail"). A holding that the United States lacks a right of appeal would inadequately secure the "special circumstances" requirement.
 
 
 9
 Third, appellees' argument exhibits insufficient concern for providing the necessary assurance that the United States can abide by its extradition treaties. The United States has a legal obligation under all its extradition treaties to extradite to the other country, assuming the requisite conditions are satisfied, any person in the United States, other than a U.S. national, who has been accused or convicted of a listed offense committed on the territory of a treaty partner. See, e.g., U.S.-U.K. Extradition Treaty, Art. I (obligating the parties to extradite individuals, regardless of nationality). Compare Supplementary Convention to the Extradition Convention of January 6, 1909 Between the United States of America and France, Feb. 12, 1970, U.S.-France, Art. III, 22 U.S.T. 407, 409-10 (exempting nationals of the requested state from the obligation to extradite). To permit the erosion of the "special circumstances" restraint by the availability of bail without the possibility of judicial review would weaken the confidence of other nations in the ability of the United States to perform its legal obligations under such treaties.
 
 
 10
 This concern is particularly relevant with respect to the Supplementary Treaty. The intense interest in both the United States and the United Kingdom in the problems of Northern Ireland requires that the role assigned to the courts, including that of the circuit courts of appeal under Article 3(b) of the Supplementary Treaty,[3] be performed sensitively and scrupulously. To do this properly requires that we provide appellate review of the bail decisions made by magistrates and district judges for all potential extraditees whose extradition is governed by the Supplementary Treaty.
 
 
 11
 Nonetheless, our jurisdiction to accomplish this end is not explicitly assured by the Supplementary Treaty. Rather, it ultimately must rest on the usual statutory grounds governing appellate jurisdiction.
 
 
 12
 A. Appellate Jurisdiction Under 28 U.S.C. § 1291
 
 
 13
 1. The Grant of Bail is a Decision of the District Court Under Section 1291.
 
 
 14
 The appellees insist that this court has no jurisdiction to hear this appeal because the district judge's action in fixing their bail was not the action of a district court within the meaning of 28 U.S.C. § 1291, which provides that courts of appeal "shall have jurisdiction of appeals from all final decisions of the district courts." In their view, Judge Legge, of the Northern District of California, fixed their bail as "a judge" authorized by 18 U.S.C. § 3184 to certify their extraditability, if and when it should be appropriate to do so, under the U.S.-U.K. Extradition Treaty and its Supplement. 18 U.S.C. § 3184, however, provides only that "any justice or judge of the United States, or any magistrate authorized to do so" shall, in appropriate circumstances, certify to the Secretary of State that there is sufficient evidence to sustain the charges filed against the potential extraditee. It contains no provisions for bail whatsoever. Therefore, a district judge's authority to grant bail in an extradition case cannot be founded on 18 U.S.C. § 3184.
 
 
 15
 Rather, the district court's authority to grant bail in extradition cases is rooted in the Supreme Court's decision in Wright v. Henkel, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903). The court's opinion in Wright did not bestow the power to admit bail on "justices" or "judges of the United States" or "commissioners." Rather the Supreme Court vested that power in "courts." Wright, 190 U.S. at 63, 23 S.Ct. at 787. Accordingly, we hold that a judge's decision to grant or deny bail in an extradition case is a decision "of the district court" within the meaning of section 1291.[4]
 
 
 16
 2. Bail Rulings in Extradition Cases are Final Decisions Under Section 1291.
 
 
 17
 Bail decisions in criminal cases are governed by chapter 207 of Title 18 of the U.S.Code, 18 U.S.C. § 3141 et seq. Section 3145 of Title 18 specifies, in relevant part, that in a criminal case the appeal of a decision to grant or deny bail "is governed by the provisions of section 1291 of title 28 and section 3731 of this title." 18 U.S.C. § 3145. Section 1291 of title 28 governs appeals from "final decisions" of district courts. In contrast, section 1292 of title 28 governs appeals from "interlocutory decisions." Thus, by reason of 18 U.S.C. § 3145, bail decisions in criminal cases are "final," within the meaning of section 1291.
 
 
 18
 The bail decision in an extradition case serves the same purpose as does the bail decision in a criminal case. In both, the judge is deciding whether a person will be imprisoned, or will enjoy the blessings of liberty, while awaiting a further judicial proceeding. Thus, given that bail decisions in criminal cases are "final" under section 1291, presumptively bail decisions in extradition cases should also be considered "final," within the meaning of section 1291. To rebut this presumption, there must be a principled basis for holding that bail decisions in extradition cases are somehow "less final" than bail decisions in criminal cases.[5]
 
 
 19
 The dissent attempts to distinguish bail decisions in criminal cases from bail decisions in extradition cases on the ground that there are explicit statutory provisions granting the United States a right to appeal an unfavorable bail decision in a criminal case. 18 U.S.C. § 3145; 18 U.S.C. § 3731. In contrast, there is no statutory provision that explicitly grants the United States a right to appeal an unfavorable bail decision in an extradition case.[6]
 
 
 20
 The dissent's argument is unconvincing. On the one hand, the dissent agrees that district judges may grant bail in extradition cases despite the absence of any statutory authority, while on the other hand, the dissent contends that in the absence of statutory authority there can be no appeal by the government from the district judge's decision to grant bail. Judge Noonan cannot have it both ways. If judges cannot act without explicit statutory authority, then the district judge had no authority to grant bail in the first place. But if the district judge had the authority to grant bail, as Wright v. Henkel recognizes, it follows that an explicit statutory grant of authority is not, in every case, a necessary prerequisite for judicial action.
 
 
 21
 Of course, the dissent is correct to note that this court requires some statutory basis for jurisdiction. That basis is section 1291, which explicitly grants this court jurisdiction to review final decisions. The issue, therefore, is whether a grant of bail in an extradition case is a "final decision," within the meaning of section 1291. The dissent's argument, in essence, is that a bail decision in an extradition case cannot be considered "final," because there is no statute explicitly stating that it is "final." There is no need for such a statute. Courts routinely apply statutes to particular facts, despite the absence of a second statute explicitly stating that the first statute applies to the particular case. Indeed, statutory interpretation would be impossible if judges were precluded from applying statutes in this manner. Thus, we hold that the district court's decision to grant bail to these potential extraditees is "final," within the meaning of section 1291. This holding is consistent with the fact that bail decisions in ordinary criminal cases are "final," within the meaning of section 1291.
 
 B. Other Relevant Case Authority
 
 22
 Generally, when the United States appeals to a circuit court from a grant of bail by a magistrate or district court to a potential extraditee, the circuit court simply exercises jurisdiction without explicitly discussing its authority to do so. For example, this circuit in Matter of Extradition of Smyth, 976 F.2d 1535 (9th Cir.1992), reversed the district court's grant of bail to Smyth, also an escapee from a Northern Ireland prison, without discussing its jurisdiction. Similarly, the First Circuit, in both United States v. Kin-Hong, 83 F.3d 523 (1st Cir.1996), and United States v. Williams, 611 F.2d 914 (1st Cir.1979), reversed a district court's grant of bail pending extradition without discussing its jurisdiction. The Second Circuit, in a habeas case where the government appealed from a district court judgment, affirmed a grant of bail by the district court, following a magistrate's issuance of a certificate of extraditability. Hu Yau-Leung v. Soscia, 649 F.2d 914, 920 (2d Cir.1981), cert. denied, 454 U.S. 971, 102 S.Ct. 519, 70 L.Ed.2d 389 (1981). The Second Circuit, like the other circuits, did not explicitly discuss its jurisdiction. We recognize the circuit court's authority to hear such appeals, and have supplied a reasoned basis in support of jurisdiction.[7]
 
 
 23
 Appellees cite two cases in which courts have ruled that they lacked jurisdiction to hear an appeal from a bail ruling in an extradition case. In re Extradition of Ghandtchi, 697 F.2d 1037 (11th Cir.1983), vacated as moot, 705 F.2d 1315 (11th Cir.1983); In the Matter of the Requested Extradition of Krickemeyer, 518 F.Supp. 388 (S.D.Fla.1981). Neither case is controlling precedent in this circuit. Moreover, both cases are readily distinguishable from the cases before us, because they held only that a district court lacks jurisdiction to hear an appeal from a magistrate's bail ruling in an extradition case; neither case decided whether a circuit court has jurisdiction to hear an appeal from a district court's bail ruling in an extradition case.[8]
 
 
 24
 Finally, both Ghandtchi and Krickemeyer arose under the Treaty Between the United States of America and the Federal Republic of Germany Concerning Extradition, June 20, 1978, U.S.-F.R.G., 32 U.S.T. 1485.[9] That treaty, unlike the Supplementary Treaty with the U.K., does not include any provision for appeals of extradition decisions. The courts in both Ghandtchi and Krickemeyer reasoned that bail rulings cannot be subject to appeal, because a bail decision is merely a preliminary step on the path to determining extraditability, a decision that itself is not subject to appeal under the extradition treaty with Germany. See Ghandtchi, 697 F.2d at 1038 n. 2; Krickemeyer, 518 F.Supp. at 389. Even assuming that Ghandtchi and Krickemeyer were correct, and we need not decide that issue here, they cannot control the jurisdictional issue in this case, because Article 3(b) of the Supplementary Treaty with the U.K. provides explicitly for a right of appeal.
 
 
 25
 Ghandtchi and Krickemeyer indicate a perception of extradition proceedings as being both apart from the mainstream of appellate jurisdiction principles and as having remote importance to the interests of the United States. While that perception is frequently a correct one, it is by no means always the case. A finding of "special circumstances," whether by a magistrate or a district court, should be reviewable. In this case, as already indicated, it is necessary; in others, where the extradition treaty mandates no necessary involvement of the circuit court, perhaps a mode of discretionary review (depending on whether a magistrate or the district court set the bail) by either the district or circuit court would suffice.
 
 
 26
 C. Judicial Responsibility Under The Supplementary Treaty
 
 
 27
 The Supplementary Treaty, Article 3(a), precludes extradition when "the person sought establishes ... by a preponderance of the evidence that the request for extradition has in fact been made with a view to try or punish him on account of his race, religion, nationality, or political opinions, or that he would, if surrendered, be prejudiced at his trial or punished, detained or restricted in his personal liberty by reason of his race, religion, nationality or political opinions." Article 3(b) provides that "the defense to extradition set forth" in Article 3(a) shall apply only to those offenses set forth in Article 1 of the Supplementary Treaty, which includes such offenses as murder, kidnapping, an offense involving the use of a bomb, an attempt to commit an Article 1 offense, and participation as an accomplice of a person who commits or attempts to commit such an offense.[10] Supplementary Treaty, Art. I.
 
 
 28
 Article 3(b) explicitly involves both the district courts and the courts of appeal of the United States. A finding either that the potential extraditee has established a valid defense under Article 3(a), or that he has not, "shall be immediately appealable by either party to the United States district court, or court of appeals, as appropriate." Supplementary Treaty, Art. 3(b). Thus, it is highly probable that the extraditability of Artt, Brennan, and Kirby will come before this court on appeal, either by these individuals or by the United States. It follows that in discharging the duties of this court under the Supplementary Treaty we must recognize and protect the interests of Artt, Brennan, and Kirby, as well as those of the United Kingdom and the United States. Each individual and each Nation has rights and interests which must be scrupulously recognized and properly enforced.
 
 
 29
 These obligations require that the release on bail of potential extraditees under the terms of the U.S.-U.K. Extradition Treaty and the Supplementary Treaty be examined to determine both the sufficiency of bail to assure that the performance of this court's duties will not be aborted by flight of the potential extraditee, and its propriety under Wright v. Henkel. Thus, it is our duty to review both the grant of bail by the district court to Artt, Brennan, and Kirby, and its sufficiency if properly granted.
 
 III.
 APPLICATION OF WRIGHT V. HENKEL
 
 30
 Wright v. Henkel does not provide significant guidance as to what "circumstances" might be considered "special." The district court's finding of "special circumstances" relied on four "factors." We shall examine each of them.
 
 A. Delay
 
 31
 This circuit has recognized that "unusual delay in the appeal process" can be a "special circumstance" that will justify bail under the Wright v. Henkel standard. Salerno v. United States, 878 F.2d 317 (9th Cir.1989). Other circuits have expressed similar views. See, e.g., United States v. Kin-Hong, 83 F.3d 523, 524 (1st Cir.1996) (stating that " '[s]pecial circumstances' may include a delayed extradition hearing"). The district court cited delay as one factor justifying appellees' release on bail, pending their extradition hearings. The court referred both to delay prior to the bail hearings, and the highly probable lengthy delays thereafter as a result of the actual extradition proceedings themselves and the appeals therefrom. When the district court held bail hearings, in December 1995, Mr. Artt had been in U.S. custody for three and one-half years. Mr. Brennan had been in custody for almost three years, and Mr. Kirby for almost two years.
 
 
 32
 The government contends that the appellees themselves were responsible for the delay, and that they should not be rewarded for their stalling tactics. The reality is more complex. Appellees clearly preferred to delay their extradition hearings, pending completion of the extradition proceedings in Matter of Requested Extradition of Smyth, 863 F.Supp. 1137 (N.D.Cal.1994). However, delay of appellees' cases, pending resolution of the Smyth case, also served the court's interest in prudent judicial administration, and the government's interest in expediting a decision in Smyth. Since appellees were not exclusively responsible for the delay, we cannot say the district court erred in its reliance on delay as one of several factors supporting a finding of "special circumstances." However, it is a "circumstance" the source of which is the unusual character of these cases. See III.E., infra.
 
 B. Parity with Smyth
 
 33
 At the time the district court held bail hearings for appellees, James Smyth had been out on bail for over one year. The district court emphasized the need to accord Artt, Brennan, and Kirby parity of treatment with Smyth. The United States insists that, inasmuch as this court ordered that Smyth remain in custody prior to his extradition hearing, Smyth, 976 F.2d 1535 (9th Cir.1992), that the parity principle requires that we now direct the district court to revoke the bail of Artt, Brennan, and Kirby and order that they be placed in custody.
 
 
 34
 Each contention has some merit. The district court focused on the position of Smyth during the appeal process, while the United States focuses upon his position prior to the district court's refusal to certify him for extradition. Nonetheless, in a rough sense, the argument that Artt, Brennan, and Kirby should be released on bail to achieve parity with Smyth has some claim to being considered a "special circumstance."
 
 
 35
 C. No Credit for Time Spent in Custody by U.K.
 
 
 36
 The third special circumstance on which the district court relied was the fact that the U.K. very likely will not credit time spent in U.S. custody against the sentence previously imposed on the potential extraditees prior to their escape from custody. The United States responds by pointing out that this is a common practice among nations as well as the states of this nation. This is true and, aside from its broad humanitarian appeal, does not constitute a "special circumstance."D. The Lobue Cloud
 
 
 37
 The final "special circumstance" relied on by the district court is the "cloud" cast over all extradition proceedings by Lobue v. Christopher, 893 F.Supp. 65 (D.D.C.1995). Lobue held that 18 U.S.C. § 3184 was contrary to the constitutional design of separation of powers in that it empowers an Executive Branch official, the Secretary of State or his delegate, to revisit, revise, or set aside the decisions of an Article III judicial officer. Lobue, 893 F.Supp. at 78. Hence, in a suit seeking a declaratory judgment that 18 U.S.C. §§ 3184 and 3186 were unconstitutional, a District of Columbia district judge, Judge Lamberth, certified a class consisting of all persons who presently are or in the future will be under threat of extradition from the United States pursuant to 18 U.S.C. §§ 3181, et seq. In addition, on September 15, 1995, he enjoined the surrender of any class member to another nation, but did not enjoin the conduct of extradition or habeas proceedings.
 
 
 38
 The Court of Appeals of the D.C. Circuit stayed the injunction on September 29, 1995, pending appeal. In April, 1996, the D.C. Circuit held that there was no basis for jurisdiction to support the declaratory judgment action because the plaintiffs, being in constructive custody of the U.S. Marshal for the Northern District of Illinois, could challenge their custody only through a petition for habeas corpus there. LoBue v. Christopher, 82 F.3d 1081 (D.C.Cir.1996). The court also relied heavily on the inapplicability of section 10 of the Administrative Procedure Act (APA) to the officials given the power to act under 31 U.S.C. § 3184. See United States v. Doherty, 786 F.2d 491 (2d Cir.1986). As a consequence of these views, the D.C. Circuit vacated the judgment of the district court and remanded the case with instructions for the district court to dismiss it. LoBue, 82 F.3d at 1085.
 
 
 39
 Thus, at the time the district court held bail hearings for Artt, Brennan and Kirby, it knew that Judge Lamberth had issued a class-wide injunction, and it knew that the D.C. Circuit had issued a preliminary stay of Judge Lamberth's injunction, but it did not know how the D.C. Circuit would ultimately rule on the LoBue case. Given what the district court knew at the time, the court was correct to identify LoBue as a "cloud" hanging over the extradition proceedings. We cannot fault the district court for determining that that "cloud" weighed in favor of a finding of "special circumstances." In so holding, we do not intend to lend strength to Judge Lamberth's constitutional analysis.[11]
 
 E. The Uniqueness of These Cases
 
 40
 Notwithstanding the weaknesses of the "special circumstances" upon which the district court relied, we hold that such "circumstances" do exist. These are not ordinary potential extraditees. They enjoy the sympathy and are objects of concern of many Americans, both of Irish descent and otherwise. The troubles between the Protestants and Catholics in Northern Ireland have in the past engaged and continue to engage the attention of the citizens of the United States, including the President and the Secretary of State. It is not presumptuous of us to consider the consequences of a decision to grant or withhold bail within this larger context.
 
 
 41
 We are reasonably convinced that a grant of bail will contribute more to promoting harmony between the supporters of the cause of the Catholics in Northern Ireland and those whose interests are otherwise, than would a denial of bail because of any dissatisfaction we might have with the "special circumstances" upon which the district court relied.
 
 IV.
 SUFFICIENCY OF BAIL
 
 42
 The terms and conditions of bail fixed by the district court appear adequate to secure the presence of Artt, Brennan, and Kirby at the extradition proceedings. All three men have strong ties of family and friendship in California. Judge Legge set the conditions of bail so that each man's family and friends would pay a high financial price if he attempts to flee. Moreover, Judge Legge specifically warned each of them that he was fixing the bail conditions with that purpose in mind. Having overseen these proceedings since August, 1992 (in Mr. Artt's case), Judge Legge has had an opportunity to observe Artt, Brennan and Kirby's interactions with their family and friends. Based on those observations, he concluded that he could secure their presence at their extradition hearings by imposing a substantial financial penalty on their friends and family, should they attempt to flee. We have no reason to second-guess Judge Legge's judgment in that regard. To the contrary, his judgment has so far been vindicated by the continued presence of Artt, Brennan and Kirby in the Bay Area, and by their compliance with the other bail conditions.
 
 V.
 CONCLUSION
 
 43
 In framing this response to the appeal of the United States from the district court's granting of bail to those escapees from a British prison in Northern Ireland, we believe we have not placed in jeopardy the capacity of this court to perform its obligations under Article 3 of the Supplementary Treaty. It would be most unfortunate were this belief shattered.
 
 
 44
 AFFIRMED.
 
 
 45
 THE MANDATE SHALL ISSUE FORTHWITH.
 
 
 46
 NOONAN, Circuit Judge, dissenting from the assumption of jurisdiction:
 
 
 47
 Federal courts are courts of limited jurisdiction, determined by the Constitution and by statute. Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). The jurisdiction of a court of appeals to hear an appeal is determined by statute. In re Vylene Enterprises, Inc., 968 F.2d 887, 889 (9th Cir.1992). We cannot expand our jurisdiction by judicial decree. Kokkonen, 511 U.S. at 377, 114 S.Ct. at 1675. "It is to be presumed that a cause lies outside this limited jurisdiction ... and the burden of establishing the contrary rests upon the party asserting jurisdiction...." Id. (citations omitted). The United States has failed to establish that we have jurisdiction to hear its appeal in these matters.
 
 
 48
 To begin with, the United States has identified no statute that confers jurisdiction upon a court of appeals to hear an appeal from a grant of bail in an extradition matter. The absence of such a statute is fatal. Without it, this court has no business to transact.
 
 
 49
 Failing to find a statute, the United States has raised various arguments, which I now review. One is patently without merit: that is, that we have on past occasions actually reviewed the grant of bail in an extradition matter. We did so, however, with neither briefing nor analysis of our jurisdiction. See, e.g., Matter of Extradition of Smyth, 976 F.2d 1535 (9th Cir.1992). This kind of precedent is no precedent at all, even in a case where jurisdiction is not in question, see United States v. Vroman, 975 F.2d 669, 672 (9th Cir.1992), cert. denied, 507 U.S. 996, 113 S.Ct. 1611, 123 L.Ed.2d 172 (1993). A fortiori, this kind of precedent is no precedent where jurisdiction is the issue and an absence of jurisdiction is clear from the absence of a statute conferring jurisdiction. Oddly, this court now cites these unreasoned nonprecedents as authority.
 
 
 50
 The United States falls back on a difficult contention: that the grant of bail in an extradition matter is really the grant of habeas corpus. To make this argument, the government contends that the district judge has no authority to grant bail in extradition proceedings, so what he must be doing is granting habeas corpus. The argument is as ingenious as it is fallacious.
 
 
 51
 Bail and habeas corpus are, very obviously, two different animals. Habeas springs from the Constitution and is a constitutional right. United States Constitution, Article 1, Section 9, Clause 2. While excessive bail is prohibited by Amendment VIII, in the ordinary case bail is ruled by statute. See, e.g., Bail Reform Act of 1984, 18 U.S.C. §§ 3146, 3148 and 3156.
 
 
 52
 The origins of the two procedures are different. So are their purposes. In habeas, a petitioner challenges the legality of his detention. Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir.1995). Bail says nothing as to the legality of the confinement; it simply says that confinement is not necessary in order to assure the putative prisoner's presence at a trial or hearing or to prevent a danger to the community.
 
 
 53
 Bail and habeas also differ in the conditions that must precede them and in the review that may be made of them. Habeas requires an exhaustion of all other avenues of review. See Rose v. Lundy, 455 U.S. 509, 515-516, 102 S.Ct. 1198, 1201-02, 71 L.Ed.2d 379 (1982). Bail can be granted on immediate application to the judge exercising authority over the prisoner. On review of habeas, federal appellate courts consider grants or denials of habeas corpus relief de novo. Sanders v. Ratelle, 21 F.3d 1446, 1451 (9th Cir.1994). On review of bail, where appeal is permissible, the factual findings of the court are considered under a deferential, clearly erroneous standard. United States v. Townsend, 897 F.2d 989, 994 (9th Cir.1990).
 
 
 54
 Even if one could make a silk purse out of a sow's ear, one could still not transform a sow into a cat. The two animals here cannot be conflated or confused. Artt, Brennan and Kirby sought bail and were granted bail. They did not challenge the legality of their confinement. They did not seek habeas, and they did not receive habeas. There is no basis on which their release on bail can be found to be a release on a petition of habeas corpus.
 
 
 55
 As a last expedient to salvage the appeal it was suggested that mandamus might lie. The parties were requested to brief its availability. The United States conceded that of the five Bauman factors, three were absent. See Bauman v. United States District Court, 557 F.2d 650, 654-55 (9th Cir.1977). Mandamus could not be obtained.
 
 
 56
 There is no statute permitting appeal of the releases on bail. These proceedings are not habeas proceedings. Mandamus is not available. And there are additional reasons why we lack jurisdiction:
 
 
 57
 First, Judge Legge sitting as an extradition judge is not exercising "any part of the judicial power of the United States." In re Kaine, 55 U.S. (14 How.) 103, 119, 14 L.Ed. 345 (1852); In re Extradition of Howard, 996 F.2d 1320, 1325 (1st Cir.1993). Consequently, his order is the order of a federal judge acting as an auxiliary to the executive branch but it is not a final decision of a district court as required by 28 U.S.C. § 1291 as to any decision of which we may have jurisdiction.
 
 
 58
 Second, Judge Legge's order was not final. In extradition matters the government is not barred by res judicata. Hooker v. Klein, 573 F.2d 1360, 1368 (9th Cir.), cert. denied, 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978); and if the decision on extradition itself is not final, a fortiori the decision as to whether or not to grant bail in an extradition proceeding is not final. Releases on bail in an extradition proceeding do not meet the test of conclusively determining a disputed question. See Confederated Salish v. Simonich, 29 F.3d 1398, 1402 (9th Cir.1994). Noncompliance with a fairly technical rule of federal procedure that results in lack of finality is sufficient to deprive us of appellate jurisdiction. Lopez v. City of Needles, 95 F.3d 20 (9th Cir.1996); Proud v. United States, 704 F.2d 1099, 1100 (9th Cir.1983). A fortiori, lack of finality resulting from the ability of a litigant to renew its case without an appeal must leave us without power of action.
 
 
 59
 Third, there is no provision in the rules governing appeals for bail in an extradition matter because these rules are addressed either to criminal or to civil cases. Extradition proceedings are not criminal proceedings, as is agreed by all parties; no guilt or innocence is determined in them. Nor are extradition proceedings civil as the term is used in our rules, so that they are not governed by the Federal Rules of Civil Procedures. See Merino v. United States Marshal, 326 F.2d 5, 12-13 (9th Cir.1963), cert. denied, 377 U.S. 997, 84 S.Ct. 1922, 12 L.Ed.2d 1046 (1964). Extradition proceedings are sui generis. Hooker, 573 F.2d at 1369 (concurring opinion). They are "essentially administrative in character." See Fed.R.Evid. 1101(d)(3), U.S.C.A. Title 28, Notes of Advisory Committee on [1972] Proposed Rules, Note to Subdivision (d) (West 1984). Consequently, there is no provision for such elemental matters as to when the time for appeal should be taken in an extradition appeal or in an appeal of bail granted in the course of an extradition proceeding.
 
 
 60
 It has been suggested that jurisdiction lies under 28 U.S.C. § 1291 because 18 U.S.C. § 3145(c) refers to this section in creating an appeal from a release order in a criminal case. Section 3145(c) reads, in part, as follows: "An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title." The cross-reference to 18 U.S.C. § 3731 is a reference to appeals by the United States in criminal cases where bail has been granted to "a person charged with or convicted of an offense...." Consequently the drafters of § 3145 deliberately provided for appeal of criminal bail orders and did not rely on § 1291 to assure such appeal. An extradition matter is not a criminal case. That a special statute was necessary to authorize appeal of release orders in criminal cases underscores the lack of such a statute in extradition matters.
 
 
 61
 This court now relies on § 1291, with the implication that § 3731 is redundant even for appeal of bail in a criminal case. It is a poor principle of statutory interpretation to treat an act of Congress as enacted in vain. The court states: "Thus, by reason of 18 U.S.C. § 3145, bail decisions in criminal cases are 'final', within the meaning of section 1291." The statement is accurate if reference to § 3731 is added. But how are bail decisions in extradition cases final? In the court's view by creative analogy.
 
 
 62
 At the heart of the court's opinion is the thought that it would be desirable for this court to have authority to review bail decisions in extradition matters. So far, Congress has declined to give us such authority. The court's "three problems," however, are strong enough to urge reconsideration upon Congress to supply this apparent want in the statutory law governing extradition. Until Congress acts, we can do no more than call attention to the lacuna.
 
 
 63
 To the extent that we are a government of laws, the first law for a court is the law giving it authority to act. If, where no law conferring jurisdiction exists, jurisdiction can be created, we are no longer a government of laws, no longer a court. Surely there can scarcely be a more pernicious species of judicial activism than to find it desirable that one should have jurisdiction of a case and therefore reach out to create the jurisdictional basis. A judge must resist such an assumption of power. For that reason, I must respectfully dissent and decline to enter into the reasoning by which a district judge wearing two hats at once (under Article III and under Article II) may constitutionally function as a federal court.
 
 
 
 [1]
 Appellees contend that, even if this court has appellate jurisdiction, the appeal should be dismissed because it was not timely filed. The case before us is neither a civil case nor a criminal case. Therefore, neither rule 4(a) nor rule 4(b) of the Federal Rules of Appellate Procedure (FRAP) applies. FRAP 47(b) covers cases where there is no controlling law. It states: "A court of appeal may regulate practice in a particular case in any manner consistent with federal law, these rules, and local rules of the circuit. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local circuit rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement." In these cases, the orders appealed from were entered on December 27, 1995 and January 5, 1996. The government filed its notices of appeal on February 20, 1996. In accordance with FRAP 47, we consider the government's appeals to be timely
 
 
 [2]
 James Joseph Smyth, like the appellees in this case, also fled to the United States after escaping from the Maze Prison in 1983. Smyth, 863 F.Supp. at 1137
 
 
 [3]
 See footnote 10 infra for the text of Article 3
 
 
 [4]
 In his dissent, Judge Noonan contends that Judge Legge's bail order is not a decision of the district court, because judges in extradition cases do not exercise "any part of the judicial power of the United States." In re Kaine, 55 U.S. (14 How.) 103, 119, 14 L.Ed. 345 (1852). We agree that a judge's decision rendered pursuant to section 3184 is not a decision of the district court. However, the grant of bail cannot be considered a decision rendered pursuant to section 3184, because section 3184 does not authorize judges to grant bail
 
 
 [5]
 The dissent suggests that extradition cases differ from criminal cases because the government can effectively appeal an adverse bail ruling in an extradition case by initiating new extradition proceedings. That may be so. But if we were to hold, as the dissent recommends, that the government has no direct appeal from adverse bail rulings, and that the initiation of new extradition proceedings is the government's only option in such cases, that would frustrate the common interest of courts and litigants in the efficient administration of justice, without serving any apparent purpose
 
 
 [6]
 We note that Congress enacted both section 3145 and the bail paragraph in section 3731 as part of the Bail Reform Act of 1984, Pub.L. No. 98-473, §§ 202-210, 98 Stat.1976-87 (1984). Prior to that time, there was no statute that provided explicitly for government appeals from adverse bail rulings in criminal cases. In the absence of such a statute, at least some courts of appeal held that such bail rulings were appealable final decisions. See, e.g., Iuteri v. Nardoza, 662 F.2d 159, 161 (2d Cir.1981). Congress enacted section 3145 and the bail paragraph in section 3731 to make explicit the appellate jurisdiction that, Congress said, "may be implicit" in the earlier statutes. 98 Stat. 3213
 
 
 [7]
 The dissent contends that the precedents cited here are "no precedent at all." See dissent at page 15472. We agree that the exercise of jurisdiction in cases where courts have not explicitly addressed their jurisdiction is not controlling precedent. Even so, the fact that courts of appeal have previously exercised jurisdiction in appeals from bail rulings in extradition cases is a factor that weighs in favor of our holding that decisions to grant bail are "final decisions of the district courts" within the meaning of 28 U.S.C. § 1291
 
 
 [8]
 Krickemeyer states explicitly: "An appeal, if available, would be to the court of appeals." 518 F.Supp. at 389. Ghandtchi states that "[t]he district court properly concluded that it lacked jurisdiction to review the magistrate's decision." 697 F.2d at 1037-38. However, before reaching that conclusion, the 11th Circuit panel in Ghandtchi explicitly stated that the district court's judgment that it lacked jurisdiction "constitutes a final decision within 28 U.S.C. § 1291." Id. at 1037. Therefore, the 11th Circuit decided to "reach the merits" of the district court's judgment, id. at 1037, thereby implying that it had appellate jurisdiction
 
 
 [9]
 Ghandtchi states explicitly that the U.S. instituted extradition proceedings pursuant to § 3184 "and an extradition treaty with West Germany." 697 F.2d at 1037. Krickemeyer does not refer explicitly to the treaty, but the caption describes Krickemeyer as "a fugitive from the Justice of Germany." 518 F.Supp. at 388
 
 
 [10]
 Article 3
 (a) Notwithstanding any other provision of this Supplementary Treaty, extradition shall not occur if the person sought establishes to the satisfaction of the competent judicial authority by a preponderance of the evidence that the request for extradition has in fact been made with a view to try or punish him on account of his race, religion, nationality, or political opinions, or that he would, if surrendered, be prejudiced at his trial or punished, detained or restricted in his personal liberty by reason of his race, religion, nationality or political opinions.
 (b) In the United States, the competent judicial authority shall only consider the defense to extradition set forth in paragraph (a) for offenses listed in Article 1 of this Supplementary Treaty. A finding under paragraph (a) shall be immediately appealable by either party to the United States district court, or court of appeals, as appropriate. The appeal shall receive expedited consideration at every stage. The time for filing a notice of appeal shall be 30 days from the date of the filing of the decision. In all other respects, the applicable provisions of the Federal Rules of Appellate Procedure or Civil Procedure, as appropriate, shall govern the appeals process.
 
 
 [11]
 Separation of powers principles clearly dictate that "Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch." Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, ----, 115 S.Ct. 1447, 1453, 131 L.Ed.2d 328 (1995). The gist of Judge Lamberth's argument is that "the Constitution forbids the Executive branch from reviewing the legal decisions of the federal Judiciary, [and] this is precisely the effect of" Section 3184. Lobue, 893 F.Supp. at 78. A key premise underlying this argument is that a district judge acting pursuant to Section 3184 is acting in a judicial capacity. That premise is at odds with a long line of precedents holding that a district judge acting pursuant to Section 3184 (or its predecessor statutes) "does not exercise any part of the judicial power of the United States." In re Kaine, 55 U.S. (14 How.) 103, 120, 14 L.Ed. 345 (1852) (Curtis, J., concurring). Assuming that judges acting pursuant to Section 3184 are not acting in a judicial capacity, it follows that the Secretary of State, in handling extradition cases, does not "review ... the decisions of Article III courts." Plaut, 514 U.S. at ----, 115 S.Ct. at 1453. If that is correct, then Lobue 's attack on the constitutionality of Section 3184 must fail
 There is no contradiction between saying, on the one hand, that a district judge acting pursuant to Section 3184 is not acting as an Article III court, and our holding, on the other hand, that a district judge who grants bail in an extradition case is acting as an Article III court, because a district judge who grants bail is not acting pursuant to Section 3184. See II.A., supra. In the words of Justice Blackmun, "the Constitution, at least as a per se matter, does not forbid judges to wear two hats; it merely forbids them to wear both hats at the same time." Mistretta v. United States, 488 U.S. 361, 404, 109 S.Ct. 647, 671, 102 L.Ed.2d 714 (1989).