**In the Matter of the EXTRADITION OF Muhamed SACIRBEGOVIC**

**No. 03CRIM.MISC.01PAGE19.**

United States District Court, S.D. New York.

July 3, 2003.

E. Danya Perry, Assistant United States Attorney, Office of the United States Attorney, S.D.N.Y., for U.S.

John K. Carroll, Clifford Chance US LLP, New York City, for Applicant,

### OPINION AND ORDER

MAAS, United States Magistrate Judge.

## I. *Introduction*

Muhamed Sacirbegovic, a/k/a "Muhamed Sacirbey" ("Sacirbey"), seeks to be released on bail pending a hearing on a formal request by the Federation of Bosnia and Herzegovina ("BiH") for his extradition. For the reasons set forth below, this application is denied.

## II. *Background*

Sacirbey was born in Sarajevo and became a naturalized citizen of the United States in 1973. (Letter to the Court from John K. Carroll, Esq., dated May 16, 2003 ("Caroll Letter I"), at 1). The BiH extradition request ("Request") alleges that in or around 2000, while serving as an employee of the Ministry of Foreign Affairs of BiH and as the BiH ambassador to the United Nations, Sacirbey "withdrew funds in the approximate amount of $610,982.46 from the Permanent Mission to the United Nations and General Consulate of the Federation of Bosnia and Herzegovina (the 'UN Mission') in New York, New York, by issuing checks and bank orders drawn on the UN Mission's accounts and transferring the funds to his private bank account." (*See* Compl. ¶¶ 6(a)-(b)). The Request further alleges that, during the same time period, Sacirbey withdrew approximately $1,800,000 from a second account belonging to the Republic of Bosnia and Herzegovina Investment Fund Ministry. (*Id.* ¶ 6(b)). According to the Request, as a result of these acts, Sacirbey has been charged in BiH with the crime of abuse of position or powers in violation of Article 358, Paragraph 3, of the BiH Criminal Code. (*Id.* ¶ 4).

On December 5, 2001, the Investigating Judge of the Cantonal Court in Sarajevo (the "Cantonal Court") issued a warrant for Sacirbey's arrest. (*Id.*). As a consequence, in its Request, BiH seeks Sacirbey's extradition pursuant to its Mutual Extradition Treaty with the United States ("Treaty"). (*See* Compl. Exs. A, B).

On March 25, 2003, pursuant to a Complaint for Arrest with a View Towards Extradition, and a warrant issued by Magistrate Judge James C. Francis IV, Sacirbey was arrested and presented in this District before Magistrate Judge Debra C. Freeman. (*See* Letter to the Court from

Assistant United State Attorney E. Danya Perry, dated June 2, 2003 ("Perry Letter"), at 1). After a hearing, Judge Freeman ordered that Sacirbey be detained. (*Id.*).

This matter first came before me on June 4, 2003, in connection with Sacirbey's application for bail pending an extradition hearing. After hearing oral argument, I reserved decision and permitted counsel to make further submissions, which have since been received. At the bail hearing, Sacirbey's *pro bono* counsel, John K. Carroll, Esq., of the law firm of Clifford Chance U.S. LLP, also requested sufficient time to secure the assistance of one or more expert witnesses. Accordingly, although the Court was available to conduct it earlier, the extradition hearing was scheduled to commence on September 11, 2003.

III. *Discussion*

A. *Applicable Law*

■ In cases involving domestic crimes, federal magistrate judges routinely take calculated risks by granting bail to those accused of crimes. Indeed, the Bail Reform Act requires that a defendant be released on bail unless the judge determines that the defendant poses a flight risk or danger to the community, in which event the defendant is still entitled to be released, provided that there are conditions which can overcome those concerns. 18 U.S.C. §§ 3142(b), (c). In the extradition context, however, if the accused were to be released on bond and thereafter absconded, the mere surrender of a quantity of cash or other property "would hardly meet the international demand" and could cause the United States government "serious embarrassment." *Wright v. Henkel,* 190 U.S. 40, 62, 23 S.Ct. 781, 47 L.Ed. 948 (1903). For these reasons, bail applications in extradition cases are typically denied in the absence of "special circumstances." *See id.* at 63, 23 S.Ct. 781; *Salerno v. United States,* 878 F.2d 317 (9th Cir.1989); *United States v. Leitner,* 784 F.2d 159, 160 (2d Cir.1986)(per curiam). Such special circumstances arise "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." *Leitner,* 784 F.2d at 160 (quoting *In re Mitchell,* 171 F. 289 (S.D.N.Y.1909)(Learned Hand, J.)). In the ordinary case, there consequently is a presumption against bail for someone whose extradition has been formally sought. *In re Extradition of Molnar,* 182 F.Supp.2d 684, 686–87 (N.D.Ill.2002); *In re Extradition of Ernst,* 1998 WL 51130, at *13 (S.D.N.Y. Feb. 5, 1998).

B. *The "Special Circumstances" Requirement Applies to this Case*

■ Sacirbey argues that the "special circumstances" requirement is inapplicable to him because: (1) he has not been formally charged with any crime in BiH; (2) he is an American citizen; and (3) his alleged criminal acts occurred within the United States. (Carroll Letter I at 2–4; Letter to the Court from Mr. Carroll, dated June 11, 2003 ("Carroll Letter II"), at 2–4).

1. *No Formal Charge*

Sacirbey contends that no charge has been filed against him in BiH and that the investigating judge in Sarajevo merely seeks his testimony in connection with an investigation which ultimately may not result in the filing of charges. (Carroll Letter I at 2; Carroll Letter II at 2). In support of this contention, Sacirbey cites a May 20, 2003, article (available on the internet) which suggested that the case against him in BiH is at an investigative stage. (Carroll Letter II at 2). Suffice it to say, the Government disputes this as-

sessment. (Perry Letter at 4 ("Sacirbey is badly mistaken.")).

In *Borodin v. Ashcroft*, 136 F.Supp.2d 125, 129 (E.D.N.Y.2001), the accused advanced essentially the same claim, alleging that a Swiss request for extradition did not formally charge him with a crime, but rested instead on mere suspicion. Judge Nickerson observed that this sort of "technical argument" had been repeatedly rejected in the past because "American courts cannot become enmeshed in the technicalities of foreign criminal processes." *Id.* at 129–30. Accordingly, he concluded that "the 'charge' requirement is satisfied by a requesting nation's intent to prosecute as evidenced by the record." *Id.* (collecting cases). In that case, the Swiss government made that showing through the issuance of warrants and a request for extradition which contained "an extensive, specific and detailed account" of the alleged crimes. *Id.* at 130.

Similarly, in this case, the official documents from the Cantonal Court dated April 11 (request to conduct investigation), August 20 (decision granting the request), and December 5, 2001 (decision ordering Sacirbey's detention and two orders issuing a warrant for his arrest), together with the Request, suggest an intent to prosecute Sacirbey, who is referred to as the "indicted" and someone who "with good reason [is] suspected of having done the criminal act." (Carroll Letter I Exs. A & B; Perry Letter Ex. D). Accordingly, although Sacirbey will be given an opportunity to contest his extradition, the face of the Request suggests that BiH will be able to meet its limited burden at the formal hearing. *See In re Extradition of La Salvia*, 1986 WL 1436, at *7 (S.D.N.Y. Jan. 31, 1986)("the filing of formal charges is not a prerequisite to extradition").

2. *United States Citizenship*

Sacirbey correctly observes that the Treaty does not *compel* the extradition of a United States citizen. *See* Treaty, Art. V ("Neither of the high contracting parties shall be bound to deliver up its own citizens or subjects under the stipulations of this Treaty."). On this basis, he argues that the United States lacks an "overriding national interest" in his extradition, and that his individual liberty interests under the United States Constitution should therefore prevail. (Carroll Letter I at 2–3).

█ A United States citizen often possesses greater constitutional rights than an alien would in similar circumstances. *See Demore v. Hyung Joon Kim*, 538 U.S. ——, 123 S.Ct. 1708, 1716–17, 155 L.Ed.2d 724 (2003)("[S]ince *Mathews [v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) ], this Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens."). This does not mean, however, that the special circumstances requirement should be deemed inapplicable here simply because Sacirbey is a citizen. Indeed, United States citizens are often held without bail pending extradition to a foreign country. *See, e.g., Martin v. Warden*, 993 F.2d 824, 827–28 (11th Cir.1993)(affirming denial of bail to United States citizen); *Leitner*, 784 F.2d at 160–61 (same); *Ernst*, 1998 WL 51130, at *1, *13 (denying bail to a "native of Switzerland who is now a naturalized United States citizen").

Furthermore, even though the Treaty imposes no affirmative obligation on the United States to extradite Sacirbey, the Secretary of State clearly has the discretion to do so. Thus, Title 18, United States Code, Section 3196, provides:

If the applicable treaty or convention does not obligate the United States to

extradite its citizens to a foreign country, the Secretary of State may, nevertheless, order the surrender to that country of a United States citizen whose extradition has been requested by that country if the other requirements of that treaty or convention are met.

*See also Hilario v. United States,* 854 F.Supp. 165, 170 (E.D.N.Y.1994) ("The Secretary of State is now empowered by Congress to exercise this country's sovereign discretion to extradite American citizens as the national interest dictates."). The fact that the United States is not compelled to extradite Sacirbey therefore does not constitute a basis for ignoring the presumption that an accused whose extradition is sought will not be granted bail in the absence of "special circumstances."

### 3. *Jurisdictional Nexus*

Sacirbey next contends that this Court lacks jurisdiction to order his extradition pursuant to the Treaty because the crimes that he allegedly committed occurred solely within the United States. (Carroll Letter I at 3–4; Carroll Letter II at 3–4). In that regard, the Treaty provides for the extradition of persons "who, having been charged with or convicted of any of the crimes and offenses specified in the following article, *committed within the jurisdiction* of one of the high contracting parties, shall seek asylum or be found within the territories of the other...." Treaty, Art. I (emphasis added). Sacirbey apparently interprets the language "committed within the jurisdiction" to require the crime for which extradition is sought to have occurred within the physical boundaries of BiH. (Carroll Letter I at 3). The Government argues that the word "jurisdiction" should instead be read more broadly to refer to the "legal authority [of a party] to hear and decide a case." (Perry Letter at 7).

■ Here, again, the presumptions applicable to extradition proceedings reverse the burdens that would typically be applicable in a domestic criminal case. As a consequence, when the wording of an extradition treaty is in doubt, it must be construed in a manner which will support the foreign country's request. *See Vardy v. United States,* 529 F.2d 404, 406 (5th Cir.1976)("extradition treaties should be construed liberally"); *Extradition of Neto,* 1998 WL 898328, at *2 (S.D.N.Y. Dec. 22, 1998)(quoting *United States v. Cancino-Perez,* 151 F.R.D. 521, 523 (E.D.N.Y. 1993))("It is well-established that courts should construe extradition treaties liberally 'to achieve their purpose of providing for the surrender of fugitives for trial in the requesting country.' "); *La Salvia,* 1986 WL 1436, at *11 (if the treaty is subject to more than one reasonable interpretation, a court should "construe it in a manner that will permit extradition"). The term "jurisdiction" therefore must be construed in the manner that the Government suggests.

From the face of the Complaint and the Cantonal Court documents, it does not appear that any of Sacirbey's criminal conduct is alleged to have taken place in BiH, nor is there any suggestion that he acted in concert with others located there. Nevertheless, at this preliminary stage, the Court cannot say that Sacirbey's acts fall outside the "jurisdiction" of BiH as that term is used in the Treaty. In its Request, BiH alleges that while he was an employee of the BiH government, Sacirbey embezzled funds from the BiH UN Mission and the BiH Investment Fund Ministry. (Compl.¶¶ 6(a)-(b)). Even if these acts were committed exclusively in the United States, it requires no mental gymnastics to conclude that they likely would have had a detrimental effect in BiH, and that this consequence could reasonably have been anticipated and intended. If so,

under a liberal construction of the Treaty, BiH has jurisdiction to seek Sacirbey's extradition. *See Melia v. United States,* 667 F.2d 300, 303–04 (2d Cir.1981)(quoting *Strassheim v. Daily,* 221 U.S. 280, 285, 31 S.Ct. 558, 55 L.Ed. 735 (1911))("Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect...."); *United States v. Marasco,* 275 F.Supp. 492, 496 (S.D.N.Y.1967)(holding that an almost identically worded treaty demonstrated "an intention of the contracting parties to permit extradition whenever the extraditee is shown prima facie to have intended the harm and caused the harm to the demanding state substantially as claimed by the latter").

■ Finally, Sacirbey contends that he is not subject to extradition under the Treaty because he is not a "fugitive" from BiH. (Carroll Letter I at 3). This argument is based upon language in the Treaty which calls for "persons" charged in the requesting state to be extradited, but only if the conduct alleged would also be criminal "according to the laws of the place where the fugitive or person so charged shall be found." Treaty, Art. I. Citing *United States v. Steinberg,* 478 F.Supp. 29, 32 (N.D.Ill.1979), Sacirbey argues that a "fugitive" is one who leaves the state in which he allegedly committed the crime. (Carroll Letter I at 3). He notes that he does not meet this definition. (*Id.*). This argument fails for at least two reasons. First, the Treaty refers to a fugitive *or* "person so charged." Treaty, Art. I. Accordingly, assuming that he has been "charged" with a crime in BiH (as the Government contends), Sacirbey meets the Treaty definition of a person whose extradition may be sought. Moreover, even if the Treaty proviso were not worded in the

disjunctive, "American extradition treaties are usually construed to regard a fugitive as one who is charged with having committed a crime punishable under the laws of the demanding state, but who is not to be found in that territory after allegedly committing the crime." *Marasco,* 275 F.Supp. at 496. This liberal construction furthers "[t]he international interest in the return of individuals to face criminal charges [which] is the same regardless of whether the individual in issue is consciously evading prosecution or departed the requesting country legally and was unaware of pending charges." *Ernst,* 1998 WL 51130, at *7.

## C. No "Special Circumstances" Exist

■ Sacirbey alleges that even if he has the burden of establishing "special circumstances" before being released on bail, he meets this threshold because (1) he would be eligible for bail in BiH; (2) the political situation there justifies his release; (3) he is likely to defeat the Request at the extradition hearing; and (4) he poses no flight risk. (Carroll Letter I at 4–6). None of these contentions rises to the level of a "special circumstance" warranting his release pending the extradition hearing.

### 1. Eligibility for Bail in BiH

Sacirbey cites *In re Extradition of Nacif–Borge,* 829 F.Supp. 1210, 1221 (D.Nev. 1993), as authority for the proposition that the availability of bail for the underlying charge in the requesting country constitutes a special circumstance. In that case, which evidently involved only a provisional arrest warrant, the extraditee presented "clear and convincing evidence" that he would be eligible for bail in both the requesting nation and the United States. *Id.* at 1213, 1220. Although it is unclear whether bail was granted because the court found that it would, in fact, be made

available in the requesting state or merely because it was a possibility there, another case decided in the same district two years later expressly rejected the notion that the availability of bail in the requesting nation constitutes a special circumstance. *See In re Extradition of Siegmund,* 887 F.Supp. 1383, 1386 (D.Nev.1995).

Here, at best, Sacirbey has shown that the BiH bail statute would not preclude his release on bail. This is a far cry from a showing that bail would be a virtual certainty. If an accused's eligibility to seek bail in the requesting nation were sufficient to constitute a special circumstance, bail would soon become commonplace, rather than exceptional, in extradition proceedings involving nonviolent crimes. Accordingly, there is no basis for Sacirbey's suggestion that the mere possibility of bail in the requesting nation constitutes a special circumstance. *Cf. In re Extradition of Rouvier,* 839 F.Supp. 537, 540 (N.D.Ill. 1993)("This court concludes that the 'bail availability' special circumstance formulated by the *Nacif–Borge* court is improper....").

### 2. *Political Circumstances*

Sacirbey also contends that the political situation of the requesting country may constitute a special circumstance, as it did in *In re Extradition of Kirby,* 106 F.3d 855 (9th Cir.1996). That case involved an appeal by three escapees from the Maze prison in Belfast, Ireland, whose extradition was sought by the United Kingdom. In its decision, the Ninth Circuit cited another case, *In re Extradition of Smyth,* 863 F.Supp. 1137 (N.D.Cal.1994), *rev'd,* 61 F.3d 711 (9th Cir.1995), in which the district court denied the request of the United Kingdom for the extradition of another Irish Catholic fugitive from the Maze prison under the political offense exception of the applicable treaty. The district court

found that the extraditee would be punished on the basis of his political beliefs, and possibly killed, if he were returned to Ireland. *Id.* at 1151–55. Following this decision, Smyth was apparently released on bail pending appeal. *See Kirby,* 106 F.3d at 863.

In *Kirby,* both sides argued that "parity" with *Smyth* supported their positions. Thus, the Government contended that the escapees in *Kirby* should be held pending the extradition hearing because Smyth was not enlarged on bail during that period; the escapees, on the other hand, maintained that bail was warranted because Smyth was bailed while his appeal was pending. Accepting the latter argument, the Ninth Circuit held that "in a rough sense, the argument that [the escapees] should be released on bail to achieve parity with Smyth has some claim to being considered a 'special circumstance.'" *Id.* Although it found both this and other special circumstances on which the district court had relied to be rather weak, the court noted that the accused were "not ordinary potential extraditees." *Id.* at 864. Commenting on the strife in Northern Ireland, the court further observed:

> [The accused] enjoy the sympathy and are objects of concern of many Americans, both of Irish descent and otherwise. The troubles between the Protestants and Catholics in Northern Ireland have in the past engaged and continue to engage the attention of the citizens of the United States, including the President and the Secretary of State. It is not presumptuous of us to consider the consequences of a decision to grant or withhold bail within this larger context.

*Id.* at 864–65. On this basis, among others, the court decided to affirm the district court's decision to grant bail to the escapees.

In an attempt to draw parallels between his situation and that of the escapees in *Kirby*, Sacirbey notes "the fractious nature of the former Yugoslavia, where [he] is the very public face of a particular ethnic group." (Carroll Letter I at 5). There does not appear to be any Second Circuit case law suggesting that persons charged with alleged political offenses are entitled to special consideration by being granted bail pending an extradition hearing. Moreover, even if *Kirby* were controlling, the conclusory averments of Sacirbey's counsel plainly are insufficient to establish that he is not an "ordinary potential extraditee," and therefore, entitled to bail.

### 3. *Likelihood of Success on the Merits*

In a similar vein, Sacirbey suggests that "bail is permissible where, as here, there is a probability that the extraditee will defeat the extradition request." (*Id.*). More specifically, Sacirbey contends that the Request will fail because (a) the Treaty applies only to those who have committed crimes in BiH, and (b) the evidence submitted as part of the Request is insufficient on its face. (*Id.*). As noted above, the first of these contentions is meritless. Additionally, Sacirbey has provided absolutely no support for the second contention which will, in any event, be the subject of the extradition hearing.

### 4. *Flight Risk*

Finally, Sacirbey notes that he does not pose a flight risk. (Carroll Letter I at 5–6). Assuming that this is correct, it still does not amount to a special circumstance justifying Sacirbey's release from bail. *See Borodin*, 136 F.Supp.2d at 130 (citing cases); *Ernst*, 1998 WL 51130, at *13 (low risk of flight alone is not a special circumstance).

### 5. *Combination of Factors*

There is some authority suggesting that several circumstances which do not individually constitute "special circumstances" may rise to that level as a group—at least in cases involving a provisional arrest. *See Molnar*, 182 F.Supp.2d at 689 ("In the provisional arrest setting, however, which allows for a more liberal approach, we feel compelled to view the [accused's] articulated 'circumstances' collectively rather than singularly"); *Nacif–Borge*, 829 F.Supp. at 1216 ("Although most cases focus on a single special circumstance, courts are now recognizing that the cumulation of several factors may constitute special circumstances that justify bail pending extradition proceedings."). Accordingly, even though this case involves a formal extradition request, I have considered whether the factors cited by Sacirbey would constitute special circumstances if they were to be considered collectively. For the reasons noted above, Sacirbey's showing still falls short of the mark since he has not made a sufficient showing that the Request is facially insufficient, that political circumstances in BiH augur against his extradition, or that the BiH courts will grant him bail if the Request is honored.

### IV. *Conclusion*

For the foregoing reasons, Sacirbey's application for bail is denied. This ruling is without prejudice to the renewal of this application based upon the fuller record which I expect will be made at the extradition hearing. That hearing shall commence, as previously scheduled, on September 11, 2003, at 10:00 a.m., in Courtroom 11C.

SO ORDERED.